IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| DIANA ESPARZA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. EP-04-CA-241 FM |
| | § | |
| TELERX MARKETING, INC., | § | |
| | § | |
| Defendant. | § | |

## TELERX'S MOTION FOR RECONSIDERATION AND FOR THE COURT TO AMEND ITS ORDER OF MAY 10, 2005

Pursuant to Federal Rules of Civil Procedure 59(e) and 60(b), Defendant Telerx Marketing, Inc. ("Telerx") respectfully files this motion for reconsideration and for the court to amend its order of May 10, 2005, showing in support as follows:

**I.   INTRODUCTION**

On May 10, 2005, the court entered an order granting Telerx's motion for summary judgment against all the claims brought by Plaintiff Diane Esparza ("Esparza"), with the sole exception of her sexual harassment claim. Telerx moves the court to reconsider that order and dismiss Esparza's sexual harassment claim. Esparza's sexual harassment claim fails as a matter of law because the alleged harassment was not sufficiently severe or pervasive to affect a term, condition, or privilege of her employment.

The "judicial inquiry into the question whether a given instance of harassment constitutes sex-based discrimination is entirely separate from inquiry into whether the harasser's conduct was serious enough to constitute either quid pro quo or hostile environment harassment." *La Day v. Catalyst Technology, Inc.*, 302 F.3d 474, 478 (5th Cir. 2002). The court's opinion and order only addressed whether Gesuina Setzu's alleged harassment was based on sex under *La*

1



HO1 13061252.1

*Day*.[1]  Even assuming, *arguendo*, that Esparza met this part of the test (which Telerx also contests),[2] the court's opinion acknowledged that "the court [still] must decide whether the challenged conduct meets the applicable standards for a . . . hostile environment claim."[3] However, despite acknowledging the necessity of conducting this further analysis, the court's opinion does not address Telerx's separate and distinct ground for summary judgment against Esparza's sexual harassment claim – namely, that even if all the alleged incidents are considered, the alleged harassment was not sufficiently severe or pervasive to affect a term, condition, or privilege of employment.[4]

Through this motion for reconsideration, Telerx respectfully requests that the Court address this separate and distinct prong of the analysis consistent with its prior opinion and *La Day*. Telerx believes that this analysis will clearly demonstrate that Esparza's sexual harassment claim fails as a matter of law and that summary judgment should be entered on this one remaining count.[5]

II. **ESPARZA'S SEXUAL HARASSMENT CLAIM FAILS BECAUSE THE ALLEGED HARASSMENT WAS NOT SUFFICIENTLY SEVERE OR PERVASIVE TO AFFECT A TERM, CONDITION, OR PRIVILEGE OF HER EMPLOYMENT**

A. **Legal Overview**

To establish a *prima facie* case of hostile work environment based on sexual harassment, Esparza must show that: (1) she belongs to a protected class; (2) she was subjected to unwelcome

---

[1] Court's Opinion and Order at 11-12.

[2] *See* pages 9 and 10, *infra*.

[3] Court's Opinion and Order at 11-12.

[4] Telerx's Motion for Summary Judgment at 4-11.

[5] Both Federal Rule 59(e) and 60(b) authorize this motion and permit the Court to reconsider its prior judgment.

2

HO1 13061252.1

sexual harassment; (3) the harassment was based on her sex (which is what *La Day* addresses); and (4) the harassment affected a term, condition, or privilege of her employment. *See Cain v. Blackwell*, 246 F.3d 758, 760 (5th Cir. 2001); *Shepherd v. Comptroller of Public Accounts of the State of Texas*, 168 F.3d 871, 873 (5th Cir. 1999); *B.T. Jones v. Flagship Int'l.*, 793 F.2d 714 (5th Cir. 1986). Telerx did not move for summary judgment based on the third element (that the harassment was based on sex).[6] Rather, it moved for summary judgment based on the fourth element, arguing that the alleged harassment was not sufficiently severe to affect a term, condition, or privilege of employment.[7]

When determining whether the harassment "affected a term, condition, or privilege of employment," courts closely consider the "frequency of the discriminatory conduct; its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Cain*, 246 F.3d at 760 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). The Supreme Court has held that, "[f]or sexual harassment to be actionable, it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.'" *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)(citation omitted). Not all harassment will affect a term, condition, or privilege of employment. *See id.*; *Shepherd*, 168 F.3d at 874. The "'mere utterance of an ... epithet which engenders offensive feelings in an employee does not sufficiently affect the conditions of employment." *Harris*, 510 U.S. at 21 (quoting *Meritor*, 477 U.S. at 67). "A recurring point in [Supreme Court] opinions is that 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory

---

[6] Telerx's Motion for Summary Judgment at 4-11.

[7] Telerx's Motion for Summary Judgment at 4-11.

changes in the 'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (citation omitted).

To be actionable, the challenged conduct must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *See Shepherd*, 168 F.3d at 874. "Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace." *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996). The Fifth Circuit has repeatedly ruled against sexual harassment claims as a matter of law where the plaintiff's harassment was not sufficiently severe or pervasive to affect a term, condition, or privilege of employment. *See, e.g., Cain*, 246 F.3d at 760-61; *Shepherd*, 168 F.3d at 874; *Weller*, 84 F.3d at 194; *DeAngelis v. El Paso Municipal Police Officers Ass'n*, 51 F.3d 591, 594 (5th Cir. 1995).

**B.      Analysis**

Although Esparza was employed by Telerx beginning in April 2002, she alleges that the harassment occurred exclusively between late August 2002 and November 2002.[8] Esparza makes this claim despite the fact that, during this very same time period, she sent Setzu one e-mail on October 29, 2002, saying "You are Great!"[9] and another e-mail on November 6, 2002, containing streaming video of women breaking wood with their butts, along with the message, "[w]e need to laugh! Please delete after you laugh."[10] Plus, on November 11, 2002, just four

---

[8]  Esparza Dep., Ex. A at 236; Court's Opinion and Order at 2. All record citations are to the exhibits Telerx filed with its appendix and statement of facts in support of its motion for summary judgment. They are incorporate herein as if set out verbatim.

[9]  Esparza Dep., Ex. A at 65; E-mail from Esparza to Setzu of 10/29/02, Ex. E.

[10]  Esparza Dep., Ex. A at 65; E-mail from Esparza to Setzu of 11/06/02, Ex. F.

4

days before she was terminated, Esparza sent Setzu, Moreno, and other managers, an e-mail thanking them all for their "wonderful support."[11]

Esparza admits that Moreno never made any unwelcome sexual remarks to her at any time.[12] Esparza also admits that Moreno never degraded or demeaned her work.[13] Esparza concedes that she never saw Moreno or Setzu engage in any sexual behavior at work.[14] Esparza testified that as of October 3, 2002, she and Setzu had a "pretty good relationship."[15] Esparza also concedes that the alleged harassment never affected her ability to perform her job competently. As she testified:

> Q: I guess on a scale of 1 to 10 judging your performance, one being the worst, 10 the best, your performance as a program manager between late June and the day you got fired, what number would you assign to it?
>
> A: I'd say about a nine.
>
> Q: So you're saying, despite this environment that you were in, you were still able to perform your job as highly competent?
>
> A: Yes.[16]

Esparza also concedes that she never felt physically threatened by any of the alleged harassment, and that not even she believed that the alleged harassment made her environment actively hostile. Again, as she testified:

> Q: Did you ever feel physically threatened as a result of any of the –
>
> A: No.

---

[11] Esparza Dep., Ex. A at 133-34; E-mail from Esparza to Setzu et al. of 11/11/02, Ex. G.

[12] Esparza Dep., Ex. A at 205.

[13] Esparza Dep., Ex. A at 57-58.

[14] Esparza Dep., Ex. A at 206.

[15] Esparza Dep., Ex. A at 62.

[16] Esparza Dep., Ex. A at 237.

5

Q:   -- conduct? But the comments, you perceived them as offensive utterances?

A:   Yes.[17]

                        \* \* \* \*

Q:   Is it fair to say that, whatever the environment was at the Telerx facility here in El Paso, if you had thought it had reached the point where it was actively hostile, you would have, because of your extensive HR experience and because of your extensive HR education, you would have called Paula Applebach or the EEOC?

A:   Yes.[18]

                        \* \* \* \*

Q:   At any time prior to November 13, 2002 [the same day she learned that she was in serious trouble for falsifying the "Discussion Log,"] did you ever call Paula Applebach to complain?

A:   No.[19]

                        \* \* \* \*

Q:   Did you ever -- during the time you were employed there, did you ever tell the EEOC?

A:   While employed there, no.[20]

Esparza's allegations of sexual harassment are clearly not sufficiently severe or pervasive to affect a term, condition, or privilege of her employment as a matter of law. The Fifth Circuit's decision in *Shepherd* proves this beyond all doubt. In *Shepherd*, the plaintiff was sexually harassed "for almost two years." *Shepherd*, 168 F.3d at 872-73. During that time, a male co-worker named Jodie Moore made many comments about the plaintiff's nipples to her, told her she had "big thighs" while leering down her dress, tried to look down her clothing on several

---

[17] Esparza Dep., Ex. A at 236.

[18] Esparza Dep., Ex. A at 221.

[19] Esparza Dep., Ex. A at 27.

[20] Esparza Dep., Ex. A at 228.

HO1 13061252.1

occasions, touched her arm several times while rubbing her, and twice patted his lap while telling her "here's your seat." *Id.* Nonetheless, the Fifth Circuit affirmed summary judgment against the plaintiff because she "has not raised a genuine issue that the harassment affected a 'term, condition, or privilege' of employment." *Id.* at 875. In so holding, the Fifth Circuit stated:

> Whether Moore's comments and actions rendered Shepherd's working environment objectively "hostile" or "abusive" must be considered in light of the totality of the circumstances. Shepherd alleges that Moore's harassing actions spanned a period of time over a year. Even if the conduct occurred with some regularity over this time period, we must also consider the other factors that contribute to whether an environment is hostile. We agree with Shepherd that the comments made by Moore were boorish and offensive. The comments, however, were not severe. We find each comment made by Moore to be the equivalent of a mere utterance of an epithet that engender offensive feelings. *See id.* at 21, 114 S. Ct. at 370. In *Adusumilli v. City of Chicago*, the Seventh Circuit considered averments of conduct similar to Moore's, including several incidents that involved staring and unwanted touching between the elbow and shoulder. *See Adusumilli*, 164 F.3d 353, 357 (7th Cir. 1998). The court noted that "the most salient feature of the harassment is its lack of severity." *Id.* at 361. The court concluded that the conduct was too tepid to amount to actionable harassment. *See id.* at 362. We find similarly that Moore's stares and the incidents in which he touched Shepherd's arm, although they occurred intermittently for a period of time, were not severe. **None of Moore's actions physically threatened Shepherd. Nor would Moore's conduct interfere unreasonably with a reasonable person's work performance. Furthermore, Moore's actions did not undermine Shepherd's workplace competence.** *See Butler v. Ysleta Indep. Sch. Dist.*, 161 F.3d 263, 269 (5th Cir. 1998) (considering, in addition to the other factors, that "[a] plaintiff ... must show that implicit or explicit in the sexual content is the message that the plaintiff is incompetent because of her sex").
>
> **"Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected classmember's opportunity to succeed in the workplace."** *Weller v. Citation Oil & Gas Corp.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055, 117 S. Ct. 682, 136 L.Ed.2d 607 (1997). Moore's harassing actions, although offensive, are not the type of extreme conduct that would prevent Shepherd from succeeding in the workplace. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 2284, 141 L.Ed.2d 662 (1998) ("We have made it clear that conduct must be extreme to amount to a change in the terms and conditions of employment."). We find, based on a consideration of all of the circumstances, that Moore's conduct did not render Shepherd's work environment objectively "hostile" or "abusive."
>
> Shepherd's claim involves far less objectionable circumstances than those for which courts afford relief. Moore's comments were not as frequent or as serious

7

> as comments that we have found to alter the work environment. *See Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996) (finding that frequent egregious comments about sexual proclivity created hostile environment); *cf. Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996) (finding single joke involving condoms insufficient to create hostile environment). The touching of Shepherd's shoulder is not the type of severe conduct that courts have found to create a hostile environment. *See, e.g., Waltman v. International Paper Co.*, 875 F.2d 468, 478 (5th Cir. 1989) (concluding hostile environment existed where female employee sexually groped repeatedly); *Hall v. Gus Const. Co.*, 842 F.2d 1010, 1012 (8th Cir. 1988) (finding hostile environment where male coworkers cornered women and rubbed their thighs, grabbed their breasts, and held a woman so that a man could touch her). There is no evidence of an atmosphere of sexual inequality at the Comptroller's office. *See DeAngelis v. El Paso Mun. Police Officers Ass'n*, 51 F.3d 591, 596 (5th Cir. 1995) (considering this factor when comparing cases). The Comptroller has a sexual harassment policy in place and educates new employees about the policy. Furthermore, Shepherd does not allege that supervisors or co-workers other than Moore engaged in the harassment. *See id.* (same). The comparison to other cases bolsters our conclusion that, based on the totality of the circumstances, Shepherd has not demonstrated a genuine issue that the harassment created a "hostile" or "abusive" working environment.
>
> Viewing the harassment in light of existing caselaw, we hold that Shepherd has not raised a genuine issue that the harassment affected a "term, condition, or privilege" of employment.

*Id.* at 874-75 (bold added).

Esparza's hodgepodge allegations of sexual harassment over two and one-half months are not close to being as severe or pervasive as the plaintiff's nearly two years of harassment in *Shepherd*.[21] After all, Esparza testified in her deposition that the alleged harassment: (1) did not unreasonably interfere with her ability to perform her job in a "highly competent" fashion; (2) was not physically threatening to her; (3) that she herself never considered her work environment to be "actively hostile" – which is why she did not call the Director of Employee Relations, Paula Applebach, with any complaint until November 13, 2002, when she already knew her job

---

[21] Indeed, much of Esparza's alleged "harassment" has nothing at all to do with her. For example, Esparza alleges that: (1) Moreno and Setzu "dirty danced" at Little Tony's; (2) Setzu told her that she and Moreno were having an affair; (3) Fernie Padilla told her that Moreno "held the ticket" on other women's promotions; and (4) Setzu told her that Moreno was a "horny man." None of these allegations are even relevant to a claim that *Esparza* was subjected to sexual harassment. Again, in comparison to *Shepherd*, Esparza's claims clearly do not survive summary judgment.

was in serious jeopardy and was looking for a way to avoid termination;[22] and (4) during the very time Esparza now claims she was being harassed she was sending Setzu and her other alleged harassers e-mails thanking them for their "wonderful support" and otherwise complimenting them (*see supra*). Under *Shepherd*, Esparza's own deposition admissions and e-mails doom her sexual harassment case as a matter of law.

In short, as in *Shepherd*, Esparza's sexual harassment claim fails as a matter of law because the alleged harassment did not affect a term, condition, or privilege of her employment. *See, e.g., Cain*, 246 F.3d at 760-61 (ruling as a matter of law against the plaintiff because the alleged harassment did not did not affect a term, condition, or privilege of her employment); *Shepherd*, 168 F.3d at 874 (same); *Weller*, 84 F.3d at 194 (same); *DeAngelis*, 51 F.3d at 594 (same). *Prigmore v. Houston Pizza Ventures, Inc.*, 188 F. Supp. 2d 635, 642-43 (S.D. Tex. 2002) (granting summary judgment against sexual harassment claim because the allegations - though far more serious than those made by Esparza - were not severe or pervasive enough to affect a term, condition, or privilege of her employment); *Pfeil v. Intecom Telecomms.*, 90 F. Supp. 2d 742, 745-47 (N.D. Tex. 2000) (holding that plaintiff's supervisor's request for a "personal and private lunch" with her, "grunting" and his checking her "from head to toe," did not create a genuine issue of material fact that the harassment affected a term, condition, or privilege of her employment).

Finally, as set forth above, even considering Setzu's alleged acts, the alleged harassment was not severe or pervasive enough to affect a term, condition, or privilege of Esparza's employment. However, Setzu's alleged harassment should not be considered in this analysis because, for "same sex" harassment to be actionable, the Fifth Circuit has held that the plaintiff

---

[22] Esparza Dep., Ex. A at 27, 167, 221, 236-27; Telerx's Reply at 1-2.

must present evidence that the alleged harasser: (1) "made explicit or implicit proposals of sexual activity **and** provide credible evidence that the harasser was homosexual";[23] (2) was motivated by general hostility to the presence of members of the same sex as the plaintiff in the workplace; or (3) treated members of the same sex as the plaintiff worse than others. *See La Day*, 302 F.3d at 478.

In this case, there is no evidence that Setzu is homosexual – in fact, Esparza testified that Setzu has sexual relationships with men (which, by definition, means she cannot be homosexual), and offered no argument or evidence that Setzu is homosexual.[24] Also, as the Court correctly held, there is no evidence that Setzu was motivated by general hostility to the presence of members of the same sex as the plaintiff in the workplace, or treated members of the same sex as the plaintiff worse than others.[25] Accordingly, under *La Day*, Setzu's alleged acts of harassment should not even be considered in analyzing whether the alleged harassment was sufficiently severe or pervasive to affect a term, condition, or privilege of Esparza's employment. To be clear, however, Telerx asserts that even if Setzu's alleged acts are considered, summary judgment is still proper because the alleged harassment is insufficiently severe or pervasive to affect a term, condition, or privilege of employment.

---

[23] The court's opinion and order correctly quotes *La Day* as stating that the first method requires the plaintiff to prove that the "alleged harasser made explicit or implicit proposals of sexual activity **and** provide credible evidence that the harasser was homosexual." *La Day*, 302 F.3d at 478 (bold added). As the use of the word "and" in this quote – and the remainder of the *La Day* opinion – demonstrates, the first method does in fact require proof that the harasser is homosexual. *Id.* at 480 (focusing on whether there is credible proof that the alleged harasser was homosexual). Therefore, Telerx is correct in its assertion that the first method requires proof that the alleged harasser is homosexual regardless of whether there is a finding that the harasser made "explicit or implicit proposals of sexual activity." And, in this case, there is no proof that Setzu is homosexual. To the contrary, it is undisputed from Esparza's own testimony that Setzu has sexual relationships with men, supposedly including Moreno. *See* Esparza Dep., Ex. A at 117, 170 (admitting that Setzu has sexual relations with men); Setzu Affidavit, Ex. L at ¶ 2 (stating that "I am not homosexual, and never have been."). *See La Day*, 302 F.3d at 478 n. 3. A female who has sex with men cannot, by definition, be a homosexual.

[24] Esparza Dep., Ex. A at 117, 170; Esparza's Response to Telerx's Motion for Summary Judgment (which does not argue that Setzu is homosexual).

[25] Court's Opinion and Order at 12.

## III.  CONCLUSION

For the foregoing reasons, Defendant Telerx Marketing, Inc. respectfully prays that the court grant its motion for reconsideration and for the court to amend its order of May 10, 2005, grant its motion for summary judgment against Esparza's sexual harassment claim, order that Plaintiff Diana Esparza take nothing by way of this suit, and for all other relief to which it is justly entitled.

                                               Respectfully submitted,

                                               SEYFARTH SHAW LLP

By: _____
                       Mark J. Oberti
                       State Bar No. 00789951
                       700 Louisiana Street, Suite 3700
                       Houston, Texas  77002
                       (713) 225-2300 - Telephone
                       (713) 225-2340 - Facsimile

                       ATTORNEY-IN-CHARGE FOR DEFENDANT
                       TELERX MARKETING, INC.

HO1 13061252.1

OF COUNSEL:

SEYFARTH SHAW LLP
700 Louisiana Street, Suite 3700
Houston, Texas 77002
(713) 225-2300 – Telephone
(713) 225-2340 – Facsimile

ATTORNEYS FOR DEFENDANT
TELERX MARKETING, INC.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing instrument was served on all counsel of record, as listed below, via certified mail, return receipt requested, on the 18th day of May 2005.

Enrique Lopez
ANTONIO V. SILVA, P.C.
2616 Montana Avenue
El Paso, Texas 79903



Mark J. Oberti